IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

THOMAS E. WHITEHEAD, Individually,
and as Class Representative on Behalf
of all Similarly Situated Persons                                            PLAINTIFF

VS.                                  Case No. 05-CV-4074

THE NAUTILUS GROUP, INC. and
NAUTILUS DIRECT d/b/a Bowflex                                            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Thomas E. Whitehead's Motion to Remand. (Doc. 10) Defendants The Nautilus Group, Inc. and Nautilus Direct d/b/a Bowflex (hereinafter collectively referred to as "Nautilus") filed a response and a supplement to their response. (Docs. 13 and 16) On January 27, 2006, the Court held a hearing on the motion. (Doc. 18) After the hearing, Plaintiff filed a supplement to his motion to remand, (Doc. 19) and Defendants filed a response to the supplement. (Doc. 20) The Court finds the motion ripe for consideration.

**I. BACKGROUND**

Whitehead filed this putative class action in the Circuit Court of Miller County, Arkansas on February 9, 2005, alleging claims for unjust enrichment and fraud. (Doc. 1-2, Plaintiff's Original Class Complaint) Nautilus designs, manufactures, markets, sells, and distributes home gym products called "Bowflex." (Id. ¶ 1) Whitehead alleged that as a result of investigations by the United States Consumer Product Safety Commission ("CPSC"), Nautilus voluntarily initiated two recalls of Bowflex machines. Nautilus initiated the first recall in January 2004 for the Bowflex "Power Pro Fitness Machine with a Lat Tower attachment" and "instructed customers to 'stop using [their] backboard bench and the Lat Tower immediately and contact Bowflex for a

free repair or replacement kit.'" (Id., ¶ 2)  Whitehead further alleged Nautilus represented that consumers who contacted Nautilus would receive their repair kits in approximately two weeks, but, in fact, repair kits were not shipped to consumers for six weeks or longer. (Id., ¶ 3)  Nautilus initiated the second recall in November 2004.  The second recall involved: [1] the "Bowflex Power Pro home gym without a Lat Tower purchased prior to October 2002," [2] the "Bowflex Power Pro home gym with a Lat Tower ... purchased prior to May 1, 2004," and [3] the "Bowflex Ultimate home gym purchased prior to May 1, 2004." (Id., ¶ 4)  Whitehead alleged Nautilus instructed consumers to stop using the Bowflex machines in the incline position until the repair kit had been installed.  (Id.)  Again, Nautilus informed consumers they would receive their free repair kit within two weeks, but the repair kits were not shipped for six weeks or longer. (Id., ¶ 5)

      Whitehead alleged Nautilus' failure to provide the repair kits in the time it represented rendered the Bowflex machines useless until the repair kits were actually provided. (Id., ¶ 18)  Whitehead sought to represent a nationwide class of consumers who owned the recalled Bowflex machines. (Id., p. 6, ¶ 20)  Whitehead sought recovery for himself and the putative class for the loss of use of the Bowflex machines resulting from the delayed delivery of the repair kits. (Id., ¶¶ 27-47)

      On October 11, 2005, the Miller County court entered an order (Doc. 1-15) docketing Whitehead's First Amended Class Complaint. (Doc. 1-12, p. 5)  In his amended complaint, Whitehead alleges that Nautilus possesses the names, addresses, and telephone numbers of the majority of Bowflex machine owners. (Doc. 1-12, ¶ 3)  Despite Nautilus' possession of this

information, it did not immediately ship repair kits to these customers at their known addresses; instead, Nautilus required its customers to request a repair kit. (Id., ¶ 5)

While Whitehead still only pled causes of action for unjust enrichment and fraud in his first amended complaint, he added factual allegations and bases for recovery under his unjust enrichment and fraud causes of action not found in his original complaint.  For example, Whitehead's amended complaint alleged by forcing customers to ask for a repair kit, Nautilus possibly rendered "its customers permanently unfit." (Id., ¶ 6)  Whitehead also alleged Nautilus forced customers to wait for weeks "while newly formed muscles softened and cardiac health diminished." (Id., ¶ 11)  Whitehead pled that Nautilus had been unjustly enriched by requiring customers to request the repair kits before Nautilus shipped the kits, (Id., ¶¶ 42, 44, 46, 49, 52) not just because of the delay in receiving the repair kit, as alleged in the original complaint. Whitehead also pled Nautilus fraudulently represented to its customers that they had a "duty to request a repair kit." (Id., ¶ 56)  Whitehead also sought damages associated with customers having "to affirmatively request a repair kit rather than ... sending the repair kit to all known customers." (Id., ¶ 61(d))

On October 25, 2005, Nautilus removed this case pursuant to 28 U.S.C. §§ 1441 and 1453, alleging "[t]his Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant." (Doc. 1, ¶ 6)  Nautilus alleges Whitehead's first amended complaint did not relate back to the filing of his original complaint, which was filed prior to the effective date of the Class Action Fairness Act of 2005 ("CAFA"). (Id., ¶ 5)  Nautilus also

alleged the Court had supplemental jurisdiction of any claims that do relate back to the filing of Whitehead's original complaint pursuant to 28 U.S.C. § 1367.

Whitehead's motion to remand argues [1] CAFA does not provide a basis for federal jurisdiction over this action because it was "commenced" before CAFA's "date of enactment," and [2] that if a relation back analysis is proper, his first amended complaint relates back to his original complaint. In its response, Nautilus argues that Whitehead's original complaint is a nullity under Arkansas law, and there is no original complaint to which Whitehead's first amended complaint can relate back. Under Nautilus' argument, the only possible date Whitehead could have commenced his civil action was on the date he filed his first amended complaint, October 11, 2005, which would mean CAFA applies to this civil action.

Also in its response, Nautilus argues for the first time that this Court has jurisdiction based on a federal question pursuant to 28 U.S.C. § 1331 because Whitehead attacks a federal recall procedure. Nautilus bases this argument on the fairly recent United States Supreme Court decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, ____ U.S. ____, 125 S.Ct. 2363 (2005)(holding a federal court has federal question jurisdiction under 28 U.S.C. § 1331 over a state law claim if the state law claim necessarily states a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing congressionally approved balance of federal and state judicial responsibilities). Whitehead had not addressed whether this Court had jurisdiction over this case based on federal question jurisdiction as of the hearing on his motion to remand. At the hearing, the Court allowed Whitehead to file a supplement to his motion to remand addressing the issues raised by Nautilus concerning federal question jurisdiction. In his supplement, Whitehead argues [1] Nautilus did not timely raise

4

federal question jurisdiction as a basis for removal, and [2] his complaint does not raise a federal question that would support jurisdiction in this Court. Nautilus has responded to these arguments with its own supplement. The Court turns to these jurisdictional issues.

## II. DISCUSSION

### A.     Jurisdiction under CAFA

The issue here is whether Whitehead commenced his civil action on February 9, 2005, the date he filed his original complaint with the Circuit Court of Miller County, or on October 11, 2005, when his first amended complaint was filed with the Circuit Court of Miller County. CAFA applies to civil actions commenced on or after February 18, 2005. *See* 28 U.S.C. § 1332 note; Class Action Fairness Act of 2005, § 9, 119 Stat. at 14. CAFA does not define the word "commenced." State law determines when a civil action is commenced in state court. *See Plubell v. Merck & Co., Inc.*, 434 F.3d 1070, 1071 (8th Cir. 2005) *citing Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005). In Arkansas, generally a civil action is commenced by the filing of a complaint with the clerk of the court. Ark. R. Civ. P. 3(a). However, since Nautilus argues Whitehead did not commence his civil action until October 11, 2005, after the effective date of CAFA, the issue becomes whether Whitehead's first amended complaint relates back to the filing of his original complaint or is instead a new civil action. *See e.g. Plubell*, 434 F.3d at 1071. The Court must look to Arkansas law for a determination of the relation back issue. *Id.*, 434 F.3d at 1071-74.

Ark. R. Civ. P. 15(c) states

(c) *Relation Back of Amendments*. An amendment of a pleading relates back to the date of the original pleading when:

5

> (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]

Before Rule 15(c) can apply, there must be pleadings to amend. *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, Western Div.*, 348 Ark. 197, 73 S.W.3d 584 (2002). In some instances, Arkansas appellate courts have ruled complaints with certain defects should be treated as never having been filed; Rule 15(c) is inapplicable to these null complaints. *See e.g. Preston v. University of Arkansas for Medical Sciences*, 354 Ark. 666, 128 S.W.3d 430 (2003) (holding complaint alleging medical malpractice filed in Arkansas court by out-of-state attorneys who were not admitted *pro hac vice* in Arkansas a nullity); *St. Paul Mercury Ins. Co.*, 348 Ark. at 204-7, 73 S.W.3d at 588-90, (holding *pro se* complaint alleging medical malpractice filed by deceased's parents and other heirs-at-law a nullity because complaint did not strictly comply with Arkansas survival and wrongful death statutes as to proper plaintiffs, Ark. Code Ann. §§ 16-62-101, 102); *see also Rhuland v. Fahr*, 356 Ark. 382, 155 S.W.3d 2 (2004); *Estate of Byrd v. Tiner*, 81 Ark.App. 366, 101 S.W.3d 887 (Ark. App. 2003). In these cases, the original complaints were filed prior to the statute of limitations running, but the proposed amended complaints were not filed or requested to be filed until after the statute of limitations had run. Therefore, the plaintiffs were required to successfully argue their amended complaints related back to the original complaints in order to avoid the statute of limitations.

Nautilus argues Whitehead's claims as set forth in his complaint are so deficient that they render the complaint a nullity. Under Nautilus' argument, the Court should treat the original complaint as having never been filed. Then, Nautilus would have the Court find that no

6

complaint exists to which Whitehead's first amended complaint can relate back, leaving the only possible commencement date of October 11, 2005.

Nautilus believes that because Whitehead only seeks "loss of use" damages, the original complaint should be viewed as a nullity. In Arkansas, the measure of damages to personal property is calculated by determining the difference in fair market value of the property immediately before and immediately after the occurrence. *Southwestern Bell Telephone Co. v. Harris Co. of Fort Smith*, 353 Ark. 487, 109 S.W.3d 637 (2003). Generally, a plaintiff is not entitled to recover damages for the loss of use of personal property. *Id.*, 353 Ark. at 490-91, 109 S.W.3d at 639. Whitehead's damages do seem to be premised only on his inability to use his Bowflex machine for a period of six weeks. Whitehead's complaints may or may not withstand the scrutiny of a motion to dismiss for failure to state a claim. However, that is not the issue before this Court. The issue is whether Whitehead's original complaint is a nullity. The Court does not believe it is a nullity. Nautilus has cited no Arkansas cases holding a complaint seeking loss of use damages a nullity.

The cases holding complaints nullities are mostly brought in the context of survival and wrongful death claims brought by ineligible plaintiffs under Arkansas' survival and wrongful death statutes, Ark. Code Ann. §§ 16-62-101, 102. The Arkansas Supreme Court has clearly stated these statutes, in derogation of common law, must be strictly construed. *See Rhuland*, 356 Ark. at 389, 155 S.W.3d at 6. There is no Arkansas precedent for dealing with loss of use damages in the same manner.

Nautilus makes similar arguments with respect to Whitehead's claims for unjust enrichment and fraud. The Court's analysis of this argument is consistent with its analysis of the

loss of use damages set forth above; that is, no Arkansas precedent exists to show Whitehead's unjust enrichment and fraud claims render his original complaint a nullity. The Court finds Whitehead's original complaint is not a nullity. Since Whitehead's original complaint is not a nullity, the Court must decided whether his first amended complaint relates back to the original complaint under Ark. R. Civ. P. 15(c).

As stated above, Whitehead's first amended complaint relates back to his original complaint if the claims asserted in his first amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in" his original complaint. *See* Ark. R. Civ. P. 15(c). Whitehead's claims of unjust enrichment and fraud as alleged in both complaints arise out of Nautilus' recalls in January 2004 and November 2004. Many characteristics of the original complaint remain in the first amended complaint. For example, the proposed class definition and parties remains the same. The Court finds Whithead's claims as asserted in the first amended complaint arose out of the conduct, transactions and occurrences set forth in his amended complaint. The Court also finds Whitehead's first amended complaint relates back to original complaint. Therefore, the Court finds this civil action was commenced on February 9, 2005, prior to the effective date of CAFA, and that CAFA does not apply to this civil action.

**B.      Jurisdiction based on a Federal Question**

The first issue the Court must determine is whether Nautilus timely raised federal question as a basis for jurisdiction. The removal statute, 28 U.S.C. § 1446(a), provides, "A defendant or defendants desiring to remove any civil action ... from a State court shall file in the district court of the United States for the district and division within which such action is pending

8

a notice of removal ... containing a short and plan statement of the grounds for removal ... " The removal statute also contains a time limit for filing a notice of removal. Section 1446(b) states, "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting for the claim for relief upon which such action or proceeding is based ... ."

Nautilus filed a timely notice of removal, but the issue here is whether Nautilus may assert a new ground for jurisdiction, not asserted in its notice of removal, in its response to Whitehead's motion to remand. Nautilus did not assert this Court had subject matter jurisdiction over this civil action based on a federal question in its notice of removal but waited until it filed a response to Whitehead's motion to remand to pursue the federal question jurisdiction issue. Nautilus filed its response of December 27, 2005, or 77 days after Whitehead's first amended complaint was filed and 63 days after Nautilus removed the case. Nautilus has argued its notice of removal can be amended to assert this new ground for subject matter jurisdiction. The Court does not agree.

Amendments to cure "defective allegations of jurisdictions" are allowed in "trial and appellate courts." *See* 28 U.S.C. § 1653. However, the ability to cure technical defects in a notice of removal should not be confused with adding a new ground for federal jurisdiction. Adding new grounds for federal jurisdiction are not permitted after the thirty-day time limit in § 1446(b) has expired. *See Uppal v. Electronic Data Systems*, 316 F.Supp.2d 531 (E.D.Mich.2004); *Blakely v. United Cable System*, 105 F.Supp.2d 574, 579 (S.D.Miss.2000) *citing Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 516-17 (S.D.N.Y.2000); *Stein v. Sprint Communications Co.*, 968 F.Supp. 371, 374 (N.D.Ill.1997); *Wright v. Combined Ins. Co. of*

9

*America*, 959 F.Supp. 356, 359 (N.D.Miss.1997); *Spillers v. Tillman*, 959 F.Supp. 364, 372 (S.D.Miss.1997); *Lowes v. Cal Drive Int'l, Inc.*, No. 97-407, 1997 WL 178825 (E.D.La.1997); *Iwag v. Geisel Compania Maritima*, 882 F.Supp. 597, 601 (S.D.Tex.1995). The leading treatise on federal practice addresses this situation as follows:

> The notice of removal required by Section 1446(b) may be amended freely by the defendant prior to the expiration of the thirty-day period for seeking removal ... Thereafter, however, the cases indicate that the notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice. As the numerous illustrative cases cited in the note below indicate, the amendment of the removal notice may seek to accomplish one or more of several objectives: it may correct an imperfect statement of citizenship, or state the previously articulated grounds more fully, or correct the jurisdictional amount. Completely new grounds for removal jurisdiction may not be added and missing allegations may not be furnished, however.

14C Charles A. Wright, Arthur R. Miller & Edward Cooper, Federal Practice and Procedure § 3733 at 357-61 (3d ed. 1998) (footnotes omitted). Elsewhere, the treatise warns

> The party seeking removal should take care to identify all possible bases of federal subject matter jurisdiction over the suit in its notice of removal because the district court may decline to assert jurisdiction over the case for reasons not averred in the removal notice and deny the removing party leave to amend its notice to include further grounds of federal subject matter jurisdiction after the expiration of the relevant time period.

*Id.*, § 3732 at 332 (3d ed. 1998). The treatise goes on to discuss *Lupo v. Human Affairs International, Inc.*, 28 F.3d 269 (2d.Cir.1994), which sets forth reasons for not allowing the party seeking removal to add grounds not set forth in its notice of removal after the thirty-day time limit has expired. Judge Mahoney wrote:

> It would be contrary to any concept of sensible judicial administration to permit [the defendant] to amend its notice of removal at this juncture (well beyond thirty days after [the defendant] first received Lupo's complaint, *see* 28 U.S.C. § 1446(b)) ... . Removal procedures seek a rapid determination of the proper forum for adjudicating an action. We are not inclined to countenance prolonged preliminary litigation over

10

the removal issue simply because [the defendant] failed in the first instance to aver
a proper jurisdictional basis for removal.

*Lupo*, 28 F.3d at 274.  The above cited authorities make clear Nautilus' arguments for federal question jurisdiction are untimely because they were not asserted until well after the thirty-day time limit for removal in 28 U.S.C. § 1446(b).  The Court finds Nautilus did not timely assert this Court had subject matter jurisdiction over this civil action based on a federal question in its notice of removal and that the notice of removal may not be amended to set forth that this Court has jurisdiction over this civil action based on a federal question.  Therefore, the Court need not decide whether it has jurisdiction over this civil action under *Grable & Sons Metal Prodcuts, Inc.*

### III.  CONCLUSION

For reasons discussed herein and above, the Court finds Whitehead's Motion to Remand should be and hereby is **granted.**  This civil action is hereby remanded to the Circuit Court of Miller County, Arkansas.

IT IS SO ORDERED, this 18th day of April, 2006.

                                        /s/ Harry F. Barnes
                                        Hon. Harry F. Barnes
                                        U.S. District Court